### AFFIDAVIT OF SPECIAL AGENT BENJAMIN COTE IN SUPPORT OF A CRIMINAL COMPLAINT

I, Benjamin Cote, having been sworn, state:

### Introduction and Agent Background

1.      I am a Special Agent of the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), and an investigative law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code.  I have been a Special Agent with HSI since April 2019 and received formal training in conducting criminal investigations at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to becoming a Special Agent with HSI, I served as a Federal Air Marshal, local police officer, and Special Agent with the Air Force Office of Special Investigations and Army Military Police.

2.      I am currently assigned to the HSI New England Document and Benefit Fraud Task Force ("DBFTF"), a specialized field investigative group comprised of personnel from various state, local, and federal agencies with expertise in detecting, deterring, and disrupting organizations and individuals involved in various types of document, identity, financial, and benefit fraud schemes.  As part of this task force, I am responsible for conducting investigations involving, but not limited to, the manufacturing, counterfeiting, alteration, sale, and use of identity documents and other fraudulent documents to evade law enforcement or for other criminal activity.  Due to my training and experience, as well as conversations with other law enforcement officers, I am familiar with the methods, routines, and practices of document counterfeiters, vendors, and persons who fraudulently obtain or assume false identities.

3.      I have participated in various aspects of investigations into the use and manufacture of fraudulent documents, including conducting physical surveillance, surveillance of controlled purchases involving undercover agents and/or cooperating witnesses, the introduction of

undercover agents, the execution of search warrants, the effecting of arrests, and the debriefing of defendants, informants, and witnesses.

## Purpose of Affidavit

4.  I submit this affidavit in support of an application for a criminal complaint charging Victor Rauel Urena Almanzar ("Urena Almanzar") with violations of 42 U.S.C. § 408(a)(7)(B) (False Representation of a Social Security Number) and 18 U.S.C. § 1028A (Aggravated Identity Theft).

5.  This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and federal agents, and my review of records described herein. This affidavit is not intended to set forth all the information that I have learned during this investigation but includes only the information necessary to establish probable cause for the requested criminal complaint and search warrant.

## Probable Cause

6.  As set forth in more detail below, there is evidence that Urena Almanzar, a citizen of the Dominican Republic, unlawfully assumed the identity of a United States citizen, G.A.J., and used the victim's Social Security number ("SSN") and other personal identifiers to obtain genuine, government-issued identification documents.[1]   These documents include identification cards issued by the Massachusetts Registry of Motor Vehicles ("RMV") and two United States passports issued in the victim's name.  There is also evidence that Urena Almanzar used one of these

---

[1] Throughout this affidavit, the initials "G.A.J." are used to refer to the name of the individual whose identity has been used by Urena Almanzar.  I am aware of the true identity of G.A.J., including his SSN and date of birth.  This affidavit likewise uses the initials M.J. and J.J. to refer to G.A.J.'s parents; their true identities are also known to me.

fraudulently obtained passports to travel between the United States and the Dominican Republic in October 2025.

<u>Simultaneous Use of the G.A.J. Identity in Massachusetts and Pennsylvania</u>

7.    On September 25, 2025, an individual successfully applied for a Massachusetts REAL ID identification card in G.A.J.'s name.[2]  An electronic system that allows participating states to determine if an applicant currently holds a driver's license or identification card in another state alerted that G.A.J. also held an active driver's license in Pennsylvania.  Subsequent record checks confirmed that the same identity—including the name, date of birth, and SSN—was being used in both Massachusetts and Pennsylvania.  Following this discovery, the Massachusetts State Police opened an investigation into suspected identity theft.

8.    Certified RMV records reflected that the individual using the G.A.J. identity in Massachusetts lived in Methuen, Massachusetts and first obtained a state-issued identification card on August 23, 1996.  The RMV had three photographs on file for this individual:

  

9.    Law enforcement determined that the man depicted in those RMV photographs appeared to be a different person than the individual using the G.A.J. identity in Pennsylvania (pictured below):

---

[2] A REAL ID is a federally compliant identification card that meets increased security standards required for boarding domestic flights.



10.     Social Security Administration records reflect that three Social Security cards have been issued for G.A.J.'s SSN (XXX-XX-1878), with the most recent card issued in February 1997 in Pennsylvania.[3]     Additionally, law enforcement obtained passport applications submitted by G.A.J.'s parents, M.J. and J.J., in 2006.   Both of their applications identified G.A.J. as an emergency contact and provided a Reading, Pennsylvania address for his contact information—the same city listed on G.A.J.'s Pennsylvania driver's license.

11.     On April 16, 2026, law enforcement interviewed the individual who had obtained a Pennsylvania driver's license in G.A.J.'s name.[4]   He provided accurate biographical information—including his place of birth, date of birth of xx-xx-1962, and SSN of xxx-xx-1898—and documents that corroborated his identity, including an authentic birth certificate and Social Security card.

12.     Agents of the Social Security Administration, Office of Inspector General, have confirmed that SSN xxx-xx-1898 is assigned to G.A.J.

Identification of the Massachusetts Subject

13.     To determine the identity of the individual posing as G.A.J. in Massachusetts, law enforcement utilized the National Crime Information Center's Interstate Identification Index (the "Triple I database"), which the Federal Bureau of Investigation ("FBI") uses as its national

---

[3] SSNs and date of births have been partially redacted herein.
[4] He has since moved from Pennsylvania to Alabama.

database for criminal history checks. Triple I database records are initiated upon the first submission of a fingerprint-supported arrest to a state repository or the FBI. The name provided during this initial booking becomes the "master name" (or "name of record") and is linked to a unique universal control number. If the individual provides different names during subsequent arrests or if their legal identity is later verified, these entries are appended to the record as aliases or "also known as" entries within the file. While the Triple I database allows for searching via any name in the file, the profile typically retains the original name provided at the time of the first arrest as its primary identifier for administrative consistency, regardless of whether that name was an alias.

14. In this case, Triple I database queries for G.A.J.'s name revealed a record under the master name "Victor Ortiz." The file listed G.A.J. as one of Ortiz's aliases, along with "Jorge Raoul Urenza Collado" and "Victor Urenia." The criminal history report included a fraud conviction in 1995 and a federal narcotics conviction in 2002. The latter conviction—which resulted in a six-year prison sentence—was under G.A.J.'s name. Additionally, publicly available data for the Methuen, Massachusetts address listed on G.A.J.'s Massachusetts identification card reflected that an individual named "Victor Urena German" (date of birth XX-XX-1995) was associated with the address.

15. Using these names and aliases, law enforcement queried the Dominican Republic's "Cedula" database, which houses information about the mandatory national identification card for citizens and legal residents of the Dominican Republic. They located an expired Cedula for "Victor Rauel Urena Almanzar" (date of birth of XX-XX-1966). The picture on Urena Almanzar's Cedula (below left) closely resembles the individual who obtained a Massachusetts identification card in G.A.J.'s name:

Search and Post-*Miranda* Admissions

16.     On April 2, 2026, members of the Massachusetts State Police (assisted by HSI DBFTF) executed a state search warrant at the Methuen, Massachusetts address referenced above. They also arrested Urena Almanzar, who was present when the search was executed.

17.     In connection with the arrest, officers read Urena Almanzar his *Miranda* rights. He stated that he understood those rights and agreed to speak with investigators. At first, he claimed to have been born in New York and later moved to the Dominican Republic, where he said his family was from. When asked directly whether he was, in fact, from the Dominican Republic (not New York), Urena Almanzar stated, "Yes." He reported that the individual who law enforcement had also linked to his Methuen address, "Victor Urena German," is his son and currently resides in the Dominican Republic. Urena Almanzar agreed that law enforcement could refer to him as "Victor"—his real first name—and directed them to where he stored identity documents in G.A.J.'s name. Officers located and seized multiple genuine identification documents bearing Urena Almanzar's photograph but issued in G.A.J.'s name, including: a United States passport, a Social Security card, a Massachusetts REAL ID identification card (issued September 25, 2025), a Massachusetts vehicle title document, and a Massachusetts fishing license.[5]

18.     Urena Almanzar continued to speak with law enforcement while he was transported to the Massachusetts State Police barracks in Andover, Massachusetts. He reported that he entered

_____

[5] The identity documents appear to have inadvertently misspelled G.A.J.'s last name by one letter.

the United States in his late 20s or early 30s.[6]   Urena Almanzar indicated that he had obtained a New York birth certificate and social security card in G.A.J.'s name from a friend.  During booking, Almanzar was asked what his middle name was.  He replied that it was "Rauel"—his true middle name, as reflected on his expired Dominican Cedula.

Fraudulent Acquisition or Use of Documents

19.    Department of State records reflect that Almanzar—using G.A.J.'s identity— successfully applied for United States passports in 1999 and 2022 using SSN XXX-XX-1878 and date of birth XX-XX-1962.  According to law enforcement database searches, the only active passport associated with the G.A.J. identity is passport number A05657222.

20.    Based on my training and experience, I know that a valid United States passport must be shown to depart from or reenter the country by air or at a pedestrian border crossing.  Law enforcement records reflect that on October 11, 2025, Almanzar used passport number A05657222 to board JetBlue flight B6 637 from John F. Kennedy International Airport in New York, destined for Cibao International Airport, in Santiago, Dominican Republic.  On October 29, 2025, Urena Almanzar returned to the United States from Mexico via a pedestrian border crossing.

21.    A review of Urena Almanzar's Massachusetts RMV record reflect that, in connection with obtaining a Massachusetts REAL ID identification card on September 25, 2025, Urena Almanzar listed G.A.J.'s SSN (XXX-XX-1878) on the application form and presented multiple identification documents in G.A.J.'s name, including a Social Security card in G.A.J.'s name with SSN (XXX-XX-1878) and a United States passport card in G.A.J.'s name.

---

[6] Urena Almanzar is sixty years old, so his estimated time of entry in the early to mid-1990s coincides with the first records of him being present in the United States: the 1995 fraud conviction captured in the Triple I database records and the 1996 Massachusetts RMV application submitted under G.A.J.'s identity.

## **Conclusion**

22.      Based on all of the foregoing, I submit there is probable cause to believe that on or about September 25, 2025, Victor Rauel Urena Almanzar, posing as G.A.J., for the purpose of obtaining for himself and any other person anything of value from any person, and for any other purpose, did, with intent to deceive, falsely represent a number to be the SSN assigned by the Commissioner of Social Security to him in a Massachusetts REAL ID identification card application, when in fact, such number was not the SSN assigned by the Commissioner of Social Security to him, in violation of 42 U.S.C. § 408(a)(7)(B).  I further submit that there is probable cause to believe that on or about September 25, 2025, Victor Rauel Urena Almanzar, posing as G.A.J., did knowingly transfer, possess, or use, during and in relation to any felony enumerated in 18 U.S.C. § 1028(A)(c), to wit, misuse of a social security number, and without lawful authority, a means of identification of another person, namely, the personal identifying information of G.A.J., in violation of 18 U.S.C. § 1028A.

Sworn to under the pains and penalties of perjury,

Special Agent Benjamin Cote
Homeland Security Investigations

SWORN before me telephonically pursuant to Fed. R. Crim. P. 4.1(d)(3) this 8th day of May 2026.

HONORABLE DONALD L. CABELL
CHIEF UNITED STATES MAGISTRATE JUDGE